Chief Justice Robertson
delivered the Opinion of the Court in this case—in the decision of which Judge Ewing took no part.
James McIntire and John McIntire, two of the sons of Nicholas McIntire, having, prior to 1805, taken possession of a thousand acres of land in Bourbon county, granted to their father in 1784, each of them claiming to be entitled to the equitable right to a moiety thereof, by bonds from their father, dated in 1784—he died in 1805, after publishing a will, afterwards admitted to record, in which, after making various specific devises, not affecting the Bourbon tract of land, he devised the residue of his estate to his sons Jacob and Isaac McIntire, who afterwards claimed that tract under that residuary devise.
James McIntire, some time prior to 1810, sold to James Hughes two hundred and twenty seven acres of the said tract of one thousand acres; and, in 1808, Isaac McIntire, for the recited consideration of five pounds, conveyed whatever interest he held in the same tract of one thousand acres, to John McIntire.
In 1814—during the pendency of a suit in chancery brought in 1810, by James Hughes against the heirs of Nicholas McIntire, deceased, for a conveyance to the two hundred and twenty seven acres he had bought from James McIntire—Isaac McIntire conveyed to Hughes all his interest in the entire tract of one thousand acres; and, in 1819, whilst the same suit was still pending, James McIntire assigned to Hughes, the bond he held on his father for five hundred acres. And, in consequence of these sales by James McIntire, Hughes finally obtained a decree against Jacob and Isaac McIntire, for a conveyance of the legal title they claimed as residuary devisees, to four hundred and fifty acres— *575 one Piper having been secured, by James McIntire, in fifty acres of his five hundred acres.
In 1822, a fieri facias for sixty six dollars sixty two cents, which had been issued for costs decreed in favor of Hughes, in the suit just mentioned, was levied on Jacob McIntire’s remaining interest in the tract of one thousand acres; and, at a sale under that execution, Shepherd—for about seventy dollars—bought, and obtained the sheriff’s deed for, the whole of that interest, supposed to be the undivided legal right to two hundred and fifty acres. Afterwards, in 1823, having, himself, procured the revival of a judgment of eviction which had been obtained by Jacob McIntire against John McIntire, and others holding under him, and having also caused a writ of habere facias possessionem to be issued on that judgment, Shepherd was put into the possession of about two hundred and forty seven acres by the sheriff, under that writ; and which land he has ever since occupied and claimed as a purchaser under the execution against Jacob McIntire, and also under a contract of purchase, alleged to have been made in 1823, with James Hughes for the most of the undivided interest of five hundred acres, claimed by him under the deed of 1814, from Isaac McIntire.
The sheriff’s deed to Shepherd having afterwards been declared void by this Court: first—because the sale under the execution was made whilst persons holding adversely to Jacob McIntire were in the actual and exclusive possession of the land thus sold; and, secondly—because the decree, to enforce which the execution was issued, had been rendered on a contract made before land in this State was subject to sale under execution—an action of ejectment was brought against him, on the demise of Jacob McIntire, and a judgment for an undivided moiety of the two hundred and forty seven acres was therein rendered against him.
To enjoin that judgment, and also to obtain other and general relief, this bill in chancery was filed by Shepherd against Jacob McIntire and Kenaz Farrow claiming under him, and against the heirs of James Hughes, deceased.
Sale of land under ex’on ; the purchaser obtains possession; the deft. in the ex’on afterwards brings ejectment against him, and —the shff’s deed being declared void — recovers a judg’t of eviction: held, upon the purchaser’s bill to enjoin the judg’t, that he has a lien on the land, for the sum paid by him in its purchase — it being so much paid by him, to the use of the execution debtor; & the injunction should not be dissolved until that claim is satisfied.
Champerty charged in a bill, must be taken as true against a defendant who demurs to the allegation.
The lessor of a pltf. in eject, had sold the land to a stranger while the deft. was in the actual possession with an available lien on the land : this sale was in violation of the champerty act of 1824, which — tho’ the sale was void, & the vendor’s title may not be forfeited — prohibits either party from maintaining any action upon it; and the fact of the sale, constituting a good defence to the action, and being unknown to the def't until after the term in which the trial was had, he was, upon its discovery, entitled to a new trial; and having filed his bill in eq. with injunction, charging the champerty, among other things, and the charge being admitted or established, the def’t pltf in the eject.) must submit to a new trial, or the injunction will be perpetuated; and that (wide post) is the only purpose for which the facts can be made available after judgment.
*576 One chief object of the bill was to obtain a partition, and a perfect title in severalty to the land claimed by Shepherd under his purchase at the sheriff’s sale, and to that claimed under his alleged contract with Hughes and the deed from Isaac McIntire to Hughes.
The bill was taken for confessed against Jacob McIntire. And Hughes’ heirs having required proof of the alleged sale by their father, and Farrow having demurred in part and answered in part—the Circuit Court, upon the final hearing of the case, dissolved Shepherd’s injunction, and dismissed his bill absolutely.
It is to reverse that decree that this appeal is prosecuted.
In revising the decree, we will first consider the appellant’s claim to relief against the judgment in ejectment for Jacob McIntire’s undivided moiety of the two hundred and twenty seven acres; and afterwards notice his claim under his alleged contract with Hughes.
And as to this first matter, there is, in our judgment, error to the prejudice of the appellant.
First. Were he entitled to nothing else, he has, we think, an equitable right to retain the possession of the land as a security for the money which, as we must presume, he paid to the use of Jacob McIntire, on Hughes’ execution against him. And the injunction to McIntire’s judgment of eviction should not be dissolved, until that sum shall have been reimbursed, or, in some equitable mode, settled. That matter ought, therefore, in our opinion, to have been investigated and equitably adjusted—and the record does not show that the appellant has no right to the equitable lien.
Second. After the filing of his original bill, the appellant urged, in some of his amended bills, the discovery of the fact, that Farrow had made with Jacob McIntire, a champertous contract for the land, and had carried on the action of ejectment in McIntire’s name, for his (Farrow’s) own benefit; and had, for a nominal pecuniary consideration, obtained a conveyance for Jacob’s interest in the entire tract of land. To these allegations Farrow demurred, and the Circuit Judge sustained his demurrers. The facts, as alleged, must therefore be *577 taken, for the present, to be all true; and, so considering them, they are amply sufficient, in our opinion, to entitle the appellant to a new trial of the action of ejectment, as he seems to have discovered them since the term at which that judgment was rendered.
The champerty act of ’24, in prohibiting any suit by either party, upon the title which was the subject of the champertoussale, is clearly constitutional, though it may not be, so far as it forfeits the title. It was intended to act on the remedy; not to destroy the mere title.
*577 Though the appellant’s deed may have been void, nevertheless he had, as just stated, an available lien, and was, in fact, in adverse possession of the land at the date of the alleged conveyance from McIntire to Farrow; and therefore, according to the first section of the champerty statute of 1824, (1 Stat. Law, 285-6,) that conveyance was void; and though, therefore,McIntire’s pre-existent title was not thereby forfeited, or avoided, yet, as both he and Farrow have virtually confessed the allegation that the action of ejectment was prosecuted, and is to be enforced, for the exclusive benefit of the latter, the action on the demise even of the former could not have been maintained, had the fact now confessed been pleaded and proved on the trial.
But according to the allegations, as made and confessed, the contract between Farrow and Jacob McIntire, was in violation of the second section of the statute last referred to—which declares, that neither party shall have a right to maintain any suit on the title concerning which the champertous contract was made. And this provision is certainly constitutional—even though that which denounces a forfeiture of the title itself may not be so. And, indeed, the sole object of the whole of that anomalous statute, was to act on the remedy, and not to destroy the mere title. Even the provisions respecting cultivation and improvement are merely subsidiary to the purpose of enforcing the occupant statute of 1812; because no forfeiture is denounced for non-improvement, if a successful claimant will agree, on record, to abide the provisions of the act of 1812. The only practical effect of all the provisions respecting cultivation and forfeiture for non-cultivation, is, therefore, that, if the successful claimant will submit to the act of 1812, there shall be no forfeiture. And even if the forfeiture of title, in the mode prescribed by the act of *578 1824, for non-improvement, should be deemed unconstitutional, we cannot perceive why, if the occupant act of 1812 be, as it has often been adjudged to be, constitutional, the provisions of the act of 1824, as to improvements, should be considered unconstitutional, so far as they have the effect only of preventing a judgment or decree for land adversely occupied, unless the party suing for it will consent to abide the occupant act of 1812.
The provisions of the act respecting cultivation & improvement, are merely in aid of the occupant law of 1812 — as there is no forfeiture where the successful claimant agrees to abide by the latter act ; which being (as has been often decided) constitutional — the act of 1824 — though it may be unconstitutional in denouncing a forfeiture of title for a failure to improve — is not so, it seems, when construed as merely prohibiting the rendition of any judg't or decree, unless the pltf. will agree to abide by the occupant law of 1812.
An adverse claim to land being prosecuted successfully, and submitted to by the tenants in possession — except one, who continues to resist, reverses a decree that had been obtained, and finally defeats the claim: the party who thus saves the land, after the owners had abandoned it, is entitled to compensation for his trouble and expenses, for which he may assert a lien on the land; Bond — Hughes to Shepherd: the proof of its existence not sufficient.
*578 But the second section of the champerty act of 1824 is, so far as it operates on the remedy, undoubtedly constitutional.
Then, had the facts now urged, and virtually admitted, been known and proved on the trial of the action of ejectment, the lessor could not have obtained the judgment which the appellant has enjoined.
But, as the eleventh section of the act of 1824, authorizing a bill in chancery after judgment, does not apply to cases arising under the first and second section, the facts now relied on, can, in our opinion, be made available after judgment, for one purpose only; and that is a new trial in the action of ejectment.
We are, therefore, of the opinion, that the Circuit Judge erred in sustaining the demurrers, and also in overruling the appellant’s motion for leave to file an amended bill, setting forth other and more specific facts than those previously exhibited. If the facts thus stated be admitted or proved, the injunction should be perpetuated, unless Farrow will consent to a new trial of the ejectment.
But upon the next point:, the claim to partition—in consequence of Isaac McIntire’s deed to Hughes, and of the alleged bond of the latter to the appellant—depends on other and different facts and principles; and, upon the facts as now appearing, it would be difficult to perceive any sufficient ground for decreeing a partition, or for giving any other relief than that indicated in the first branch of this opinion: unless, as is not improbable, McIntire’s title was established by the Supreme Court of the United States, against that of Miller’s heirs, through the instrumentality of the appellant. If this be *579 so, and if, also, as seems now to be the fact, other claimants under McIntire’s patent surrendered to Miller’s claim, and failed to prosecute the suit in the Supreme Court, the appellant would be unquestionably entitled to at least an equitable lien on the land, for a reasonable compensation for his trouble, and a reimbursement of what he expended in successfully and alone asserting. McIntire’s title.
Suggestions that a certain conveyance — Isaac McIntire to John, has not been successfully assailed; and reasons for believing that the bond from McIntire, the ancestor, in pursuance of which that conveyance was made, was not, as charged, a forgery; and that Hughes, as to that conveyance, was not an innocent purchaser. But as John’s heirs were necessary parties to litigate these matters, and are not before the court, there is nothing decided in relation to them.
But if he could be entitled to any other or greater relief in this branch of the case, he has failed to establish satisfactorily the facts upon which he seeks that relief: first—although required by Hughes’ heirs to prove that he holds their ancestor’s bond, he has exhibited only a paper purporting to be a copy of such an obligation, and his evidence is far from being satisfactory or sufficient to show that there ever was a genuine original.
Second. The prior deed from Isaac to John McIntire, has not been successfully assailed. It is by no means certain that John’s bond on his father was spurious, (1.) because he settled on the land long prior to his father’s death, and was not disturbed or questioned as to his right; (2.) because James McIntire having a genuine bond for one moiety of the thousand acres; and he and John both being on the land, claiming it as their own, and their father having failed to make, any specific disposition of it by his will—are facts conducing, in no slight degree, to the conclusion that the testator had given the whole thousand acres to his two sons, James and John—one undivided moiety to each; and (3.) because it is scarcely probable that Isaac McIntire would have conveyed all his interest to John, for the nominal consideration of five pounds, unless he had known that John, as well as James, was equitably entitled to a moiety of the thousand acres, and that therefore he himself had no available right to any interest therein under the residuary devise to himself and Jacob.
But there is no proof of fraud, or of entire want of consideration in the conveyance from Isaac to John McIntire; and not only is it rather probable that Hughes *580 had notice of that deed when he obtained his own, in 1814, but there is no proof that Hughes gave Isaac McIntire any consideration for that conveyance.
Certain heirs (the heirs of John McI.) petitioned to be made def’ts to a pending suit in ch’y, and a paper in the suit, purports to be an answer to their bill held, that these proceedings, there being nothing else to show that they were parties, did not make them so.
It would rather appear, therefore, from the facts, as now exhibited, that John McIntire’s heirs may have been entitled to an undivided moiety of the thousand acres, either under his father’s gift, or the deed from Isaac McIntire; and if under the former, Jacob McIntire would have no equitable right to any portion of the tract.
But to litigate these facts conclusively, John McIntire’s heirs were necessary parties, and the record does not show that they were ever made parties. They petitioned to be made parties, and there is a paper in the record purporting to be an answer by the appellant, to a bill filed by them; but there is neither any such bill, or cross bill, in the record, nor any answer by those heirs to the appellant’s bill, nor even any record evidence of their having been, in any mode, made parties to this suit.
It was, therefore, under this head, erroneous to dismiss the appellant’s bills absolutely.
Wherefore, the decree of the Circuit Court is reversed, and the cause remanded, with instructions to overrule the demurrer to the charge of champerty, and give leave to answer thereto; and also to give leave to bring the heirs of John McIntire before the Court.