J udge Underwood
delivered the Opinion of the Court.
Two patents — one for two thousand acres, the other for sixty five, issued to John May and Joseph Jones. Andrew Crocket filed a bill in chancery, asserting a claim to half these lands, and, by consent of parties, a decree was rendered directing the defendants to convey half the land to John Fishback, and appointing commissioners to make the partition and conveyance. This decree *272 was executed by conveying to Fishback, the land designated on the cónnected plat, by the lines R O, O E, K F and the Kentucky river, around to R ; or by the lines R 0, 0 F, and by the river, around to R. The triangle 0, K, F, is the laud in dispute; and the main question is, whether the division, line should run from 0 to K, and thence to F, or whether it should run directly from 0 to F. The deed to Fishback' was executed in October, 1813.
The deed of a oomoiissioner, appointed to soil and convey land under a decree so drawn as to include move land than the decree authorizes him to sell, may pass the title t the land embraced by the decree: no more
The judgment for the plaintiff in the ejectment —to which ex Geptions are taken here.
it seems that John L. May, Daniel Eppes and Polly his wife, acting as the legal representatives of John May, deceased, in March, 1814, sold to Robert Scott, Seven eighths of a moiety'of the tv^o thousandacre tract, and were to convey upon being secured in the purchase money. Scott failing, a bill in chancery was filed by John L. May &c. to enforce their lien upon the land. Such proceedings were had, as eventuated in a decree, directing a sale of the land, to raise the purchase money, and a commissioner was appointed to-make the sale, and convey to the purchaser. Mrs. Scott, the defendant in error, the widow of Robert Scott, who had departed this life, became the purchaser ; and the commissioner conveyed to her the seven eighths of the two thousand acres, by deed, dated in October, 1821. This deed, however, can only be good to pass the title, of seven eighths of a moiety, because the bill and decree, taken in connection, shew that the commissioner’s sale was limited to that quantity.
In November, 1828, John L. May and Polly Eppes, styling themselves heirs and legal representatives of John May, deceased, conveyed to Mrs. Scott, the defendant in error, seven eighths of the land included within the bounds of the sixty five acre grant, as held by them. This deed, awkardly drawn, was probably intended to pass the title of seven eighths of a moiety.
Mrs. Scott, asserting title'under her deeds of October, 1821, and November, 1828, instituted an action of ejectment against Moss and Aldridge, tenants in possession, and recovered a verdict for a moiety of the land in the triangle 0, K, F. Upon this verdict, the court *273 djudged that she vecover her term yet to come in the land and premises in the declaration mentioned.
If one of several defendants in ejeetment dies, the surviving parties cannot, by their agreement, revive the the suit. : the heirs or devisees of the decedent must be summoned; unless they appear in person, or by their attorney, and consent to the order of revivor. — See a late law on this subject.-dcfs of 1832, p. 248.
The parties hero are parties below upon the return of the cause, and need notbesummon1ed.
Recital of fact's, from which, it is held, a jury might infer the death of an ancestor, and descent cast, before the date of a demise.
Manv exceptions are now taken to this judgment, and the proceedings which led to it. Such as are worthy of consideration will be noticed.
Before the cause came on to trial, Aldridge died, having previously entered himself a defendant,. An order was made abating the suit as to him, and reviving it against Patsey Aldridge, his widow, and Eleanor Cochran and others, his heirs. The record states, that this order was made by “ consent of the parties.” After the death of Aldridge, there were no parties to the suit but Moss and the lessor, Mrs. Scott. These had no right to consent for the widow and heirs, and thereby make them parties, and proceed to trial without giving them notice. The record does not shew that the widow and heirs of Aldridge appeared, or were notified to appear. As by the death of a defendant in ejectment, his title is cast by descent or devise on the heir or devisee, and as the action is bnt a fiction to trv the title between the real claimants, we cannot tolerate the loose practice of reviving by consent, unless it shall appear that those against whom the revivor is made, did, in person, or by attorney, assent to the order. Unless strictness is required in this respect, the representatives of deceased defendants might be prejudiced by trials conducted without their knowledge, and turned out of possession without an opportunity of being- heard. The revivor against the widow and heirs of Aldridge is too irregular to be sustained. The act approved February 2nd, 1833, will hereafter regulate proceedings to revive in cases like this. As the representatives of Aldridge are parties here, there will he no necessity to take steps to bring them before the circuit court on the return of the cause.
It is contended, that the evidence does not warrant the verdict to any extent. It is certainly true, that unless John May, the patentee, was dead previous to the date of the demise laid in the declaration, the efforts made by Mrs. Scott- to derive title through John L. May and Polly Eppes, as his heirs, must be unavailing. *274 But the proof of John May’s death at the trial, and that John L. May and Mrs. Eppes were then his heirs, connected with the records offered in evidence, and in which the manner of John May’s death is mentioned, having been killed by the Indians, and all which seems to have been read without exception, we are inclined to the opinion, that the jury might have found legitimately from the circumstances, that John May’s title had passed to his heirs prior to the date of the demise, and prior to the date of the deed of October, 1821.
An act,ual enclosure is not necessary to con stitutea “possession,” within the meaning of the champerty act of 1824.
Gonvoyanaes made anterior to the champerty act, are not affected by it.u
The defendants moved the court to instruct the jury, “that they had no right to find a verdict for the plaintiff for any of the land in controversy embraced within the deed from May and Eppes to Mrs. Scott, and which land was, at the date thereof, in the possession of the defendants.” The court amended the instruction by adding thereto the words, “ by actual enclosure,” and then gave it. The plaintiffs in error insist, it should have been given without the amendment. The first section of the act relative to champerty and maintenance, approved the 7th of January, 1824, makes void all contracts, executed or executory, purporting to convey or sell land, “ of which any other person than the vendor or vendee shall, at the time of such sale or purchase, have possession, adverse to the right or title so sold or purchased.” The act of assembly does not describe the manner of possession. It does not say that it shall be a possession by settlement, or by actual enclosure. It is well settled, that there may be a possession in fact of land not actually enclosed by the possessor. We believe it was the policy of the legislature to protect such a possession against the evils of speculation in pretended titles, and as the language of the act is unrestricted, we are of opinion that the court erred in confining its operation, in this case, to an adverse possession “ by actual enclosure.”
It appears from the proof, that the defendants had actual possession by enclosure, of part of the two thousand acre tract, on the south side of the line O P, and having made an entry on the land south of that line, with the intent to hold up to the line O K, their posses *275 sion in fact would, on obvious principles, extend up to this last line, so as to embrace all the land in contest claimed by the defendants within the two thousand acre tract. But the champerty act could have no influence upon this part of the controversy, because the deed to Mrs. Scott for this land, was made before the passage of the act.
Where there is no oneupon the land, against whom a claimant could bring his action, to try his right,there is no adverse possession, within the meaning of the champertyact.
A verdict against a def’t in ejectmentnotin possession -at the institution of the suit, should not be sustain ed.

Ante 211,

It does not appear that the- defendants had any actual possession of the tract for sixty five acres, south of the line O F, at the time the deed of 1828 was executed, or at any other period, unless the running the line O K, in 1820, by them, and claiming up to that line and the line K F, should be considered sufficient to extend their possession in fact up to these lines. We do not regard it sufficient, because May’s heirs and Jones held their interest in the sixty five acre tract south,of the line O F, until Mrs. Scott purchased in 1828; and up to that period there was no tenant or adverse possession, whicli could have justified Jones and May’s heirs, or either of them to institute an action to recover the possession; and hence there was no possession adverse in its character, to render a conveyance by them void under the champerty act. As there was no such possession, then, and as there is no evidence of any such possession having been acquired since, we cannot perceive the relevancy of the instruction growing out of the champerty act, nor do we see any ground to sustain the recovery against the defendants for any part of the land within the sixty five acre tract, south of the line O F, as they had no possession, at the institution of the suit. The instruction may have misled the jury, and is therefore cause for reversal. •
Upon the main point, whether O K, or O F, is the true division line, we deem it proper to say that we are satisfied with the conclusion of the jury upon the evidence before them. But, for the errors detected, the judgment must be reversed, with costs, and the cause remanded for a new trial.