Chief Justice Robertson
delivered the Opinion of the Court.
This is an action of ejectment, on sundry distinct de-m¡ses — one of which is in the name of the heirs of Abraham Owen, who was the senior patentee of the land sued for, and another is in the name of William Card-well, to whom those heirs conveyed their title, on the 5th of April, 1832.
A tenant, who had occupied the land since 1806, under Owens, having abandoned the possession of it, the defendants, the heirs of Osborne Sprigg, who claimed dt under a junior grant, leased it, in July, 1831, and whilst it was unoccupied, to one Shipman, who owned and then' resided on an adjoining tract, and who agreed to take possession of it, and hold it for the lessors, for a term of about three years; but who did not manifest any actual occupancy or use of it until “early in April, “ 1832, when he hauled (rails) around part of the land, and laid some of the worm of the fence.”
Verdict and judgment for defendant, and appeal.
A conveyance, lancUs h^the am tual adverse occu ger to^he^on-l™ot, passes no the6’ champerty act of !24; unless the conveyance is made to con-when the con-^ot illegal*6 W£*S
Though a sale of land that is held adversely by one who is no party to the contract, is void, by the champerty act of ’24, and the conveyance passes no title, still there can be no recovery of the land upon the title of the vendor, where it appears (to the satisfaction of the jury) that the action is for the benefit of the champertous purchaser. But if it appears (to the satisfaction of the jury) that the cham-pertous sale has been abandoned, and the action was instituted actually for the benefit of the vendor, he may recover; and, even where the purchaser has recovered the land and acquired the possession, his vendor may still treat the champertous sale as a nullity, and recover the land from his own vendee.
, Upon these facts, the Circuit Court instructed the jury in substance: — First, that, if they believed that Shipman was in the' adverse actual possession of the land at the date of the deed from the heirs of Owen to Cardwell, that conveyance was, in judgment of law, champertous and void. Secondly, that, if they believed that this suit was prosecuted for Cardwell’s benefit, there should be a verdict for the defendants on the demise in the name of Owen’s heirs. And also, thirdly, that, as Ship-man owned and was residing on an adjoining tract of land, the law implied or presumed that he was, in like manner, in the actual possession of the land leased to him.
And the jury having found a verdict for the defendants, upon which judgment was rendered in their favor, we are now to decide whether the Circuit Judge erred in giving those instructions, or either of them; for if, in either of them, there be error, the judgment must be reversed.
First. Upon the hypothesis stated by the Judge, his first instruction is unexceptionable; for, as the first-section of the champerty statute of 1824 expressly de-dares, that every sale of land in the adverse occupancy of a stranger to the contract shall be void, the convey-anee from Owen’s heirs to Cardwell passed no title, if, as assumed, the tenant of Sprigg’s heirs was, at the date , - . , 1 . ' . tnereol, m the actual possession ot the land • under Sprigg’s adverse title — unless t'he cohveya’nce was only the consummatiofi of a previous bona fide sale to Cai’d-well, at a time when such a sale was not illegal; and there having been some testimony tending, in some degree at least, to prove that Shipman was, in fact, possessed adversely of the land at the date of the deed to Cardwell, and it not appearing that the conveyance was made in execution of a valid executory sale, the instruction was not abstract, and was therefore unexceptionable.
Second. Though the pre-existent title of Owen’s heirs , *38 was neither divested nor affected by a void contract purporting to transfer it, yet, in our judgment, the policy of the first section of the statute of 1824 would be frus-
trated, and the chief object of enacting it would be evaded, if Cardwell, notwithstánding a void purchase, may, in their names, and on their still-subsisting title, evict the occupant by a suit which he is permitted thus to prosecute only because he made the prohibited contract. It is true that, after such eviction, Cardwell would not, as between himself and his vendors, be, in a legal point of view, in a better condition than he was before; for, his contract with them being void, they might still, nevertheless, elect to hold their title, and enjoy the full and exclusive benefit of it. But the aim of the statute of 1824 was to protect bom fide occupants of land against vexatious litigation growing out of champertous contracts, which tend to generate suits that otherwise, in many cases, woulchnever have occurred. So far as the parties to such contracts may be alone concerned, it is not a matter of public concern whether their contracts be valid or invalid, legal or illegal. Neither their interest nor their rights were considered by the Legislature; the peace of society and the repose of occupants were alone consulted by the act of 1824; and these would be as liable to be jeoparded, and would be as often disturbed, since the enactment of that statute as before, if the only constructive effect of it should be to change merely the ordinary style of suits, by substituting the name of the champertous vendor for that of his vendee. It may, however, be supposed by some, that the Legislature considered the legal nullity of contracts made in violation of the first section of the statute, and the risk resulting therefrom to the purchaser, a sufficient penalty for preventing such contracts, and that, therefore, no other sanction or mode for effectuating the contemplated end of the enactment being deemed necessary or proper, the courts should not prescribe any other than that expressly declared by the letter of the law: that is, that, the contract being void, the purchaser should have no legal right, either to enforce his contract against his vendor, or to enjoy the benefit of it without his gratuitous consent.
*39 But, in our opinion, sucha restricted interpretation is unauthorized, and would convict the law, not only of imbecility and inconsistency, but of suicide; for it'was altogether useless and illusory to allow a defendant, as the third section does, to plead the matter of the first section in bar of an action in the name of the champer-tous purchaser, unless he be allowed, also, to avail himself of the same matter by ar plea in bar to a suit brought, for the same purpose, by the purchaser, in the name of his vendor; and it is evident that, if the same plea be not available in each form of suit, so much of the third section of the statute as was intended for sub-serving the objects of the first section, may be easily evaded, and altogether defeated.
It cannot be material to an occupant of land, whether a, suit for evicting him, be brought in the name of a vendor, or that of a vendee upon the title of the former,at the instance and for the benefit of the latter. The only matter of concern to the occupant or to the public, . is whether the suit was the offspring of a champertous contract. Therefore, this Court said arguendo in the case of Redman vs. Sanders, (2 Dana, 69,) that the third section of the act which authorizes a defendant to plead the matter of the first section in bar of a suit against him for land in his possession, applies to' every suit which “grows out of” any contract interdicted by the first section; and decided also, in Violet vs. Violet, (lb. 326-7,) that, if a vendor may, for his own benefit, maintain an action on his own title, notwithstanding a cham-pertous contract respecting it, in violation of the second section, nevertheless, if the suit be for the benefit of the other party to the contract, it cannot be sustained.— In each case, the idea intended was that no suit which seemed to be instigated by, or to “grow out of” a contract in violation of the act of 1824, should be maintained. And in the case of Shepherd vs. McIntire, (5 Dana, 577,) this Court again said that, a suit in the name of the vendor who had violated the first section of the act, could not' be maintained for the benefit of the vendee.
When there has been a sale of land held adversely to the parties to the deed , the fact that the vendor has authorized the purchaser to carry on a suit for the land in the vendor’s name , is some evidence that it is for the benefit of the pur chaser. But the bare fact that the purchaser is pros eeuting the suit in the vendor’s name, does not prove that it is done by his authority; nor dóes it prove conclusively, where the authority is proved, that the ac tion is for the ben efit of the pureha ser. Before the champerty act is applied in such a ease, the jury should be satisfied that the suit is prosecuted with the knowledge and express consent of the vendor, for the benefit of the purcha ser.
*40 These concurrent and reiterated suggestions heretofore made by this Court, should now be deemed equivalent to a direct and authoritative judicial determination of the precise point we are now considering.
Our conclusion is that, if a vendor, who shall have made a contract in violation of the first section of the act of 1824, shall, in good faith, have abandoned it,'he may, for his own benefit alone, maintain a suit on his own unaffected title; but that no suit can be maintained in his name, and on his title, whenever it shall appear to have been instigated by the prohibited contract, and to be intended for effectuating it.
As the law considers the body rather than the shadow, and substance rather than form, the beneficial or acting party is generally, for all practical or substantial purposes, deemed' the real party to a suit; and therefore, whatever would destroy or bar his right, may generally be pleaded in bar of a suit, brought for Jhis benefit.
Moreover, the simple fact that, after a conveyance of land adversely occupied by some other person than either of the parties to the deed, the vendor, nevertheless, authorizes the vendee to prosecute a suit for the land on the vendor’s title, but for the benefit of the vendee, may be some evidence of a champertous contract between them, essentially inconsistent with the spirit, if not with the letter, of the second section; for, the conveyance being void, an authority for prosecuting a suit in the vendor’s name, for the vendee’s benefit, might tend, in some degree, to indicate an agreement for carrying on a suit for an interest in the thing sued for.
But the bare fact that the vendee is prosecuting the suit in the vendor’s name, will not prove that he has authority to do so; nor will proof of such authority alone necessarily prove that the suit is prosecuted for the vendee's benefit.
Before the statute of 1824 should be applied to the suit, the jury should be satisfied that the vendee is prosecuting it for his own benefit, with the knowledge and express sanction of the vendor as nominal party.
Where it is suspected that a suit for land is prese-cuted for the ben efit of a champer tous purchaser , in the name of his vendor, a bill of discovery 'is the most effectual mode of ascertaining the fact. Or, if the nominal party be not in court, by himself or counsel, arule might be proper for showing whe ther the suit is not prosecuted by and for the benefit of the vendee.
A mere lease of land to one in possession of an adjoining tract, will not give the latter a possession within the meaning of the champerty act of ’24; to make the lessee an occupant, within the meaning of the act, there must be such acts on his part, as will indicate to the world that he has taken the actual possession. And whether there is such a possession or not, is a question for a jury to decide.
And therefore, as Cardwell might have been prosecuting this suit, on the demise in the names of Owen’s heirs, for his own benefit, but without either their sanction or their consent that it should be done for his own benefit, the Circuit Judge erred in instructing the jury that, if he was prosecuting the suit for his own benefit, he must fail in the action.
We need not intimate whether the evidence was sufficient to have authorized the jury to find that, Cardwell was in fact prosecuting the suit, and for his own benefit, and with the knowledge and consent of Owen’s heirs. In such a case, a bill of discovery would doubtless be the most effectual and satisfactory mode of conclusively establishing the requisite facts; because, it is possible that á vendee may, for his own 'benefit, use his vendor’s name without his knowledge or consent, and when too he did not know, when he made the conveyance, the fact which rendered it void; and in such a case, a judgment against him, upon a finding by a jury, that the suit was prosecuted with his knowledge and for the vendee’s benefit, might operate harshly and unjustly. Oi', if the nominal party be not actually in Court by himself or counsel, a rule might be proper for showing whether the suit isjprosecuted with his knowledge and assent, by the vendee, and for the benefit of the vendee.
Third. We are of the opinion that the Circuit Judge erred, also, in instructing the jury, as to the legal effect to which the juxtaposition of Shipman’s own land should be constructively entitled in determining the question as to ¿he time when, or the fact whether, he was actually possessed of the land leased to him by Sprigg’s heirs.
1. If, in any sense, or for any legal end, he could be deemed to have been in the actual possession of the leased land, without any ostensible use or occupancy of it, still, without some overt act, or other fact indicating his possession, or leading others to the deduction that he claimed to be possessed of the land, the first section of the act of 1824 did not apply to Cardwell’s deed; for it would be as absurd as it would be unjust to apply the denunciations of that section to parties who *42 could have no clue for ascertaining, or even suspecting, that they were contracting for land in the actual, adverse possession of another. And hence, it was decided by this Court that, where there is no such adverse possession in fact as would enable a person out of possession to maintain, against the possessor, an action of ejectment, “there is no adverse possession within the “ meaning of the champerty act.” Moss et al. vs. Scott, 2 Dana, 275.
2. The lease for three years did not, per se, give Ship-man the constructive possession of the land leased, without actual entry. The reason why a mere purchaser of land adjoining that on which the purchaser resides and previously owned, may be sufficient to give him the constructive possession of the purchased tract, is because having, by his purchase, united both tracts into one, his residence on any part of the entire tract, thus enlarged, may be deemed an actual occupancy of the whole, and of every part equally, in judgment of law.
But that reason does not apply in this case. The lease could not be deemed an extension of Shipman’s boundary, or an enlargement of his own tract of land on which he resided. The two tracts were still as separate apd distinct in boundary and in title as they ever had been. And residence on one of them because it was his own did not imply an actual occupancy or use of -the other.
The chief object of the lease to him was that he should “take possession,” and hold it for the benefit of the lessors. And until he had done something manifesting his actual occupancy, he was not in fact possessed of the leased land which, at the date of the leasfe, was unenclosed.
Then, in the absence of any fact manifesting an actual possession by Shipman, prior to some time in April, 1832, how or upon what principle can the law adjudge that he was sooner actually possessed, unless, as a matter of law, such a possession should result from the contract of lease alone?
But in such a case, actual possesssion being a matter *43 of fact, it should be proved by such circumstances as should satisfy a jury of its ostensible or ascertainable existence, and which cannot, in our judgment, be done when there has been no overt act of occupancy by a lessee of unenclosed land; and whether there had been any such evidence of possession in fact by ■ Shipman at the date of Cardwell’s deed, was a question of fact for the jury to decide, and not a question of law arising from Shipman’s residence on his own land. We are, therefore, of the opinion that the last instruction we have noticed was erroneous, and prejudicial.
Judge Ewing’s construction of the champerty, act of 1824..
Wherefore, the judgment of the Circuit Court must be reversed, and the cause remanded for a new trial.
Sepakate Opinion by
Judge Ewing.
As this Court has so often heretofore expressed the opinion, that a suit could not be maintained on the original title, where a sale or contract had been made, in violation of the first section of the act, when it teas prosecuted for the use of the vendee, it becomes me now to submit. But I do so, expressing the opinion, that the statute is highly penal in its provisions, and should not be carried by construction beyond its literal import. And that the first section only declares void the deed, conveyance, bond or contract of purchase, and inhibits any action thereon, either to recover the possession, or to enforce its provisions, between the contracting parties, leaving the original title in full force, and unimpaired, and upon which, an action may still be maintained in the name of the vendor in the same manner as if no such sale or contract had been made. If the suit be prosecuted in the name of the vendor, on the original title, by the vendee, his title being void, would give to him no authority to use the-name of the vendor, and the suit might be dismissed on motion; but the matter could not be relied on in bar of the action. If a recovery was had without such, motion being made, the vendor alone would be entitled-to be put into possession, and without remedy on the-part of the vendee to obtain it from him, or in any manner to enforce the stipulations of his void contract. And *44 this is the penalty, and only penalty, embraced by the provisions of the section.
The inhibition was against the practice of placing pretenced titles in the hands of the speculator, tobe used in recovering the land from the occupant, and the denunciation was against the deed or contract thus made; so that if he recover the possession, by using the name of the vendor, it would inure to the benefit of the latter, and the vendee could derive no benefit from the recovery, for his costs, trouble and expense; but might lose all, together with the land recovered; which was the only penalty imposed by the words of the section; and the Court should not, by construction, have carried it further.
I do not altogether agree with the views expressed by the majority of the Court, in the opinion just read, in relation to the second section. -As by that section, the right to maintain an action at all upon the pretended right or title, is forfeited when a case shall be made out to fall within its inhibition, it is still more penal, and should be made to apply only to such cases as fall within its literal denunciation. It is my opinion, therefore, that the forfeiture applies only- to cases where the contract to give part or profit thereof, is based upon the consideration of the undertaking to recover, or carry on the suit, and was superinduced by it; and not to cases where a sale, or contract of sale, was made for the consideration of money or other thing. And that the consideration or undertaking to recover, as well as the contract to give part or profit out of the same, for or on account thereof, must be fully and clearly made out, to sustain the forfeiture. And that, consequently, a bare permission or authority to the vendee, to use the name of the vendor in the prosecution of the suit, based, not upon the consideration that he is to have part or profit for the recovery, but upon the original contract of sale for money or other consideration, will not subject the vendor to a forfeiture of his right of action upon his original title. Nor can such contract be implied from such authority to use his name, when the *45 original contract or sale was in fact founded upon a different consideration.
If a new contract is made, based upon the consideration of the undertaking to recover, by which the vendee is to have part or profit, or the whole, for his undertaking, I readily agree, that both parties would then, and not otherwise, incur the forfeiture. And beyond this, I do not feel satisfied to carry the forfeiture under the second section. If, by construction, it be carried further, the vendor, without any direct violation of the section, or intention to do so, may be made to forfeit his right of action, and consequently his title, by reason of his forfeiture of all remedy upon it.
If policy requires that it should be carried further, it is the province of the Legislature to do so.