CASE 64—PETITION ORDINARY (TRANSFERRED TO EQUITY)— APRIL 30.

## Greer, &c. v. Wintersmith, &c.

APPEAL FROM HARDIN CIRCUIT COURT.

1. EXECUTION SALES.—The sheriff's deed to a purchaser at execution sale transfers to the grantee all the title which the defendant held when the execution lien attached, and thus takes precedence over intermediate liens and transfers. To this extent the deed takes effect by relation, and must be treated as though made on the day when the lien was created.

   Land which had been sold under execution was again levied on and sold under another execution against the same defendant. The purchaser at the second sale obtained a deed from the sheriff before the purchaser at the first sale obtained a deed. *Held*—That the purchaser at the second sale acquired nothing by his purchase, and the fact that he first obtained a deed gives him no advantage.

2. SAME.—There is no warranty of title by the sheriff at an execution sale. The purchaser takes just what title the defendant in the execution has. The rule of *caveat emptor* applies.

3. SAME.—Where an officer has sold land under execution, the law presumes that he did his duty by levying the execution while in full force, the return being silent upon the subject.

4. SAME.—The defendant in an execution may waive a levy upon the property, and an advertisement of it by the sheriff, and where there is such a waiver the sale passes the title as effectually as if a levy and advertisement had been actually made.

Greer, &c., v. Wintersmith, &c.

5. THE LAW OF CHAMPERTY does not apply to a deed made to carry into effect a contract for the sale of land, of which there was no adverse possession at the time the contract was made, although the land was held adversely when the deed was made; and this rule applies to an executory verbal contract of sale.

In this case it is held to be no objection to a sheriff's deed that the property was held adversely when the deed was executed, there being no adverse holding at the time the sheriff sold the property.

6. SURETIES.—An execution was issued against principal and surety. The surety's land was levied on and sold, and the principal became the purchaser. *Held*—That as it was the duty of the principal to discharge the execution, his purchase of the surety's property inured to the surety's benefit.

W. P. D. BUSH FOR APPELLANTS.

1. By giving up the land to the sheriff to sell, by written indorsement on the execution, the defendant conferred power upon him to make the sale without a levy. (Rev. Stats., chap. 36, art. 14, sec. 4; Gen. Stats., chap 38, art. 13, sec. 3.)

2. Even if a levy was necessary to authorize the sheriff to sell, the court must presume from the facts appearing in this record that a levy was actually made. ·(Evans v. Davis, 3 B. M., 346.)

3. The failure of the sheriff to state in his return what the land was valued at, or to return the appraisement, did not invalidate the sale. (Bell, &c., v. Weatherford, 12 Bush, 505; Reid v. Heasley, 9 Dana, 324.)

4. It does not appear that either tract of land was in the adverse possession of any of the defendants at the time the conveyance was made. But, independent of this, the statute in relation to champertous contracts, etc., does not apply to conveyances made in cases like this.

J. P. HOBSON ON SAME SIDE.

1. The defendant in the execution having surrendered the land, he and those claiming under him are estopped to say that it was not subject to levy. (Harrison v. Griffith. 4 Bush, 148; 5 J. J. M., 412; Moore v. Simpson, 3 Met., 351; Anderson v. Brisco. 12 Bush, 346.)

2. From the fact that the land was surrendered, sold and conveyed, the court must presume it was levied on. (Evans v. Davis, 3 B. M., 346; Terry v. Blight, 3 Mon., 272; Freeman on Executions, sec. 274; Howard v. North, 51 Am. Dec., 769; 5 Texas, 290; Blight v. Tobin, 7 Mon., 622; 18 Am. Dec., 219; Forman v. Hunt, 3 Dana.)

3. The levy sufficiently describes the land. That is certain which can be made certain. (Freeman on Executions, sec. 281; Swan v. Parker, 27 Am. Dec.. 522 and Note (7 Yeager, 490); Note to Atwood v. Crabb, 26 Am. Dec., 666; 15 Mo., 309 (55 Am. Dec., 145.)

4. The fact that the land was adversely held when the sheriff's deed was made, if true, is immaterial, as the deed relates back to the levy and sale. (Rorer on Sales, sec. 810; Freeman on Executions, sec. 833.)

5. As Wintersmith claims under Shean, and the other parties under Wintersmith, they are all estopped to dispute Shean's title. (Carlyle v. Patterson, 3 Bibb, 93; McLean v. Gregg, 2 Mar., 455; 2 Met., 289.)

6. As Wintersmith's purchase was made under execution issuing and levied after the sale to Greer, it must give way to Greer's purchase.

7. As Kelly's purchase of Shean's property was made under an execution issued on a bond in which he was principal and Shean was surety, it inured to Shean's benefit.

MONTGOMERY & POSTEN for appellee.

Brief not in record.

JUDGE BENNETT delivered the opinion of the court.

Charlton D. Shean was the owner and in the possession of two tracts of land in Hardin county, Kentucky, one known as the Pearman tract, situated on the old road about one mile from West Point, containing about one hundred and thirty acres; the other known as the Carrico tract, situated on the turnpike about four and a half miles from West Point. About one hundred acres of this tract were on the west side of the turnpike.

While an execution, which issued from the Hardin circuit court against Charlton D. Shean, was in the hands of the sheriff of that county for collection, and which was in full force, said Shean surrendered sixty acres of the Pearman tract of land to the sheriff to sell for the purpose of satisfying said execution. The surrender of said land was evidenced by a written indorsement on the execution as follows: "I give up to the sheriff of Hardin county to sell to satisfy this execution sixty acres of land at the southwest corner of my tract of land, on the old road, about one mile from West

Point, known as the Pearman tract, and agree that he may sell without advertising, May 21, 1863.

"C. D. SHEAN."

At the same time the sheriff held another execution against Charlton D. Shean for collection, which issued from the Hardin circuit court, and said Shean surrendered to the sheriff one hundred acres of the Carrico tract of land to sell for the purpose of satisfying said execution.    The surrender was by written indorsement on the execution, as follows :  "I give up to the sheriff of Hardin county one hundred acres of land lying on the west side of the turnpike, and in Hardin county, about four and a half miles from West Point, to be sold to satisfy this execution, and agree that it may be sold without advertising, May 21, 1863.

"C. D. SHEAN."

The sheriff's written indorsements on these executions show, that after having these two parcels of land appraised by two disinterested housekeepers of the county, he sold at public outcry the two parcels of land at the court-house door in Elizabethtown, on the eighth day of June, 1863 ; and that Charles Greer, the father of the appellants, became the purchaser of both parcels at a less price than two-thirds of their appraised value.

Several years after the purchase Charles Greer died intestate, and no one having redeemed said parcels of land, the sheriff of Hardin county, on the second day of July, 1877, conveyed by deed said two parcels of land to the children of Charles Greer.    They, after said conveyance, instituted two actions of ejectment, one against Charles G. Wintersmith and others, for the purpose of

recovering the sixty-acre tract of land, and the other against Wm. Grimes and others, for the purpose of recovering the one hundred acre tract of land. The issues having been made up in each case, they were transferred to the equity side of the docket, and consolidated. The lower court, upon final hearing of the cases, dismissed them absolutely. The appellants have appealed to this court.

At the time Charlton D. Shean surrendered said parcels of land to the sheriff to be sold to satisfy said executions, he was the owner and in the possession of both parcels; therefore, they were subject to levy and sale to satisfy said executions

The contention of the appellees, Wintersmith and others, as to the sixty-acre tract of land is, first, that the appellee, Wintersmith, purchased said tract of land at a sale made by the sheriff of Hardin county, Kentucky, by virtue of an execution which issued from the Hardin circuit court in his favor and against Charlton D. Shean; and that he received a deed from the sheriff for said land in 1872, whereby he obtained a title to said land superior to that of the appellants.

This contention can not be sustained, because, first, the levy of Wintersmith's execution upon this land, and the sale thereof, occurred in the summer of 1863, and after the land had been surrendered by Shean to the sheriff, and the sale thereof to satisfy the other execution. And it is well-settled that "execution liens attach to the defendant's real, instead of his apparent interest in property. It follows from this that the sale made under such a lien can ordinarily transfer no interest beyond that in fact held by the defendant

when the lien attached, or acquired by him subsequently thereto, and before the sale." (Freeman on Executions, section 335.)

"Sales under execution always assume to be of all the title and interest of the defendant in the writ." Nothing more nor less than the defendant's title or interest in the property is presumed to be sold. That title or interest the purchaser gets. If it turns out that the defendant has no title or interest in the property sold, then the purchaser acquires nothing by his purchase. There is no warranty of title by the sheriff at an execution sale. The purchaser takes just what title the defendant in the execution has. He buys at his peril. The rule of *caveat emptor* applies to him. (Freeman on Executions, section 301.)

The land having been surrendered by Shean to the sheriff on the twenty-first of May, 1863, and a sale thereof having been made by the sheriff on the eighth of June, 1863, to satisfy the execution in favor of McMillen, at which sale Charles Greer became the purchaser of the land ; and all of which occurred prior to the levy of Wintersmith's execution upon the same land, and the purchase thereof by him at the execution sale, he, for the reasons above indicated, acquired no title to the land by his purchase.

Second. The fact that the sheriff's deed to Wintersmith is prior in date to that of the appellants, can give to the appellees no advantage over the appellants ; because the sheriff's deed must be "given such an effect as will preserve and make effectual the lien under which the execution sale was made." And in order that the deed may have such an effect, "it takes pre-

cedence over subsequent liens and transfers; and a sale and conveyance based upon such lien transfers to the purchaser all the title which the defendant held when such original lien attached. To this extent the deed, when executed, takes effect by relation, and must be treated as though made on the day when the lien was created." (Freeman on Executions, section 333; Million v. Riley, 1 Dana, 360.)

The appellees also contend that the sheriff did not levy the executions under which Charles Greer bought said parcels of land, upon them or either of them, and for that reason Greer acquired no title to either parcel of land.

As a matter of fact, both executions are silent upon the subject of a levy, and there is nothing in the record showing that the sheriff did not levy the executions upon said parcels of land.

The sheriff having sold said parcels of land by virtue of said executions, the law, in such a state of case, presumes, in the absence of all testimony to the contrary, that he, with the executions in his hands, did his duty by levying them while they were in full force upon said parcels of land. It was his official duty so to do; and the presumption must be indulged that he discharged that duty, unless his return shows that he did not. The silence of his return upon that subject is not sufficient to repel the presumption that the levy was, in fact, made. (Freeman on Executions, section 274; Evans v. Davis, &c., 3 B. Monroe, 346.)

It is also well-settled that the defendant in an execution may waive a levy upon the property, and an advertisement of it by the sheriff; and that his waiver of

the levy or advertisement of the property will estop him from objecting to the sale. The waiver will also estop him from setting the sale aside after it has been made. Freeman on Executions, section 274, and the authorities there cited.)

This waiver on the part of the execution defendant does not convert the sheriff into the mere private agent of the defendant. The sheriff, notwithstanding the waiver, still acts, in making the sale, in his official capacity, and the sale passes the title to the property as effectually as if a levy and advertisement had been actually made. If, however, the interest of the execution plaintiff should be affected by the failure of the sheriff to levy or advertise, then the question as to the sheriff's liability to him in damages would arise.

The contention of the appellees that said parcels of land were held by them adversely to the appellants at the time they received the conveyances from the sheriff, is not an available defense. There was no adverse holding of said parcels of land at the time the sheriff sold them. And it is well settled that the law of champerty does not apply to deeds made to carry into effect a contract for the sale of land of which there was no adverse possession at the time the contract was entered into, although the land be held adversely when the deed is made ; and this rule applies to an executory verbal contract of sale. (Simon, &c., v. Yonge, 12 B. Mon., 164 ; Hopkins v. Paxton, 4 Dana, 36 ; Cardwell v. Sprigg's Heirs, 1 B. Mon., 372.)

It is also well settled that a purchaser at an execution sale not only acquires, by his purchase, the lien created by virtue of the execution, but an inchoate or equitable

title to the land; and the deed of conveyance subsequently made to him by the sheriff relates back to the time of the creation of the lien by virtue of the execution, and perfects his title from that date.

It appears that in 1853 said parcels of land were sold by the sheriff of Hardin county by virtue of an execution against Kelley, Charlton D. Shean and others, and that Kelley was the principal debtor in this execution, Shean being his surety. That at the execution sale Kelley bought these parcels lands for a nominal sum. That he never claimed the benefit of his bids, nor was any conveyance ever made to him. It also appears that he never intended to claim the benefit of his bids, and that he had been repaid the sums that he had paid on his bids. Also, he being the principal in the execution and Shean his surety, as between him and Shean it was his duty to have paid off and discharged said execution. And his purchase of the property at the execution sale inured to the benefit of Shean, because the property was taken to pay the debt that he, as between him and Shean, was primarily bound to pay, and which he was morally bound to pay. Therefore, the purchase by Wintersmith of Kelley's bid, after this controversy about this land commenced, for the nominal sum of "a dollar or two," did not give the appellees a superior title to said parcels of land.

The judgment of the lower court is reversed, and the case is remanded with directions to render judgment for the appellants for both parcels of land.