CASE 71—EJECTMENT—FEBRUARY 7.

# Middlesboro Waterworks v. Neal, Etc.

APPEAL FROM BELL CIRCUIT COURT.

1. EVIDENCE—COPY OF DEED.—A copy of a deed certified by the clerk in whose office the same is recorded is not competent evidence where the clerk's certificate shows that the original was acknowledged by the subscribing witnesses, it not appearing from the certificate that it was acknowledged by the grantors.

2. SAME.—A copy of a deed appearing to have been signed by the grantor "Per Fleming Campbell" and witnessed by Fleming Campbell and others is admissible in evidence, the clerk's certificate showing that the deed was proven by the oath of two of the subscribing witnesses to be the act and deed of the grantor.

3. SAME—DEED BY EX-SHERIFF.—A deed executed by an ex-sheriff more than forty years after the sale under execution relied on to authorize same will not be admitted in evidence; it appearing that the defendant in the execution was in possession of the land after the asserted sale, this court will indulge the pre-

Middlesboro Waterworks v. Neal, &c.

sumption after such a lapse of time that the execution defend-
ant redeemed the land from the levy and sale.

4. COLOR OF TITLE—JUNIOR PATENT.—A junior patentee who enters
under his patent, enters under color of title, and his possession,
in the absence of possession, under the senior patent, extended
to the lines of his patent boundary.

5. INSTRUCTION—IGNORING CLAIM OF OTHER SIDE.—An instruction
which is predicated on the claims of one party, ignoring those
of the adverse party is error. When, therefore, both parties
claim adverse possession to the same tract it is error to define
the right of one of them without modifying the instruction so
as to define also the adverse claim.

6. SAME—POSSESSION.—The continuity of possession is not broken
by an attempt of a tenant to repudiate his landlord's right and
to claim under his adversary.

7. CHANGE OF VENUE.—The facts in this case showed such undue
influence of the plaintiff from official and political associations
and family relationships that defendant's application for a
change of venue should have been granted.

SAMPSON & CHAPMAN AND TINSLEY & FAULKNER, FOR APPEL-
LANT.

1. In overruling appellant's motion for a change of venue, the
lower court at the outset committed an error to the prejudice
of appellant which in our opinion, rendered impossible a verdict
except in favor of appellees. Bowman v. Commonwealth, 16 Ky.
Law Rep., 188.

2. A number of errors were committed by the court in admitting
as evidence to the jury copies of deeds offered by appellees and
upon which they rely solely for establishing their title to the
land in controversy. Eastland v. Jordan, 3 Bibb, 186; Act of
January 1, 1797 (First Statute Law, p. 437); Virginia Act of
1748 (5th Hen., 409); M. & B. Stat., 435; Womack & Wilson v.
Hughes, Lit. Sel. Cases, 292; McConnell v. Brown, Lit. Sel.
Cases, 464; Taylor v. Bush, 5 Mon., 87; Hyne's Rep's. v. Camp-
bell, 6 Mon., 289; Dembitz Kentucky Juris., 197, note 7; Plum-
mer v. Russell, 2 Bibb., 174; Voorhies v. Gore, 3 B. M., 529;
Bell v. Farmers' Bank of Ky., 11 Bush, 34; Com., &c., v. Jack-
son, 10 Bush, 424; Alexander v. DeKermel, 81 Ky., 345; Re-
vised Stats., vol. 2, ch. 63, art. 1, sec. 2; Chalfin v. Malone, 9
B. M., 496; Perry v. Elgin, 15 Ky. Law Rep., 855; Rucker v.

Dowley, 95 Am. Dec., 612; Morton & Ruddle v. Sanders' Heirs, 2 J. J. M., 192; Myers' Supplement, p. 293; Barbour v. Whitlock, 4 Mon., 198; Lansdale v. Breshear, 3 Mon., 330; Austin v. Colson, 18 Ky. Law Rep., 631; Bryant v. Wood, 90 Ky., 530; 4 Dana, 563; Colston v. M'Vay, 1 Mar., 185; Freeman on Executions, vol. 2, p. 323; Rev. Stat., sec. 10, art. 113, ch. 36; Rev. Stat., sec. 9, art. 1, ch. 91; Smith v. Moreman, 1 T. B. M., 154; Bell v. Weatherford, 12 Bush, 508; Anderson v. Briscoe, &c., 12 Bush, 348; Smith v. Mason, 15 Ky. Law Rep., 720.

3. The deeds all state that the lands described therein were sold under two judgments and executions in favor, one of Brittain, and one of Newlee, on the 23d of May, 1853, and that the equity of redemption from that sale was levied on and sold October 24, 1853. Ky. Stats., sec. 3995; Com. v. Keger, 1 Duv., 240.

4. The court erred in declining to give instruction "E" (record p. 997) requested by the defendant. The instruction requested is in effect, that if Henry Parker was in possession of the land at the time of the execution of the deed from John G. Newlee's heirs to John C. Colson, the jury should find for the defendant. Wickliffe v. Ensor, 9 B. M., 260; May v. Jones, 4 Litt., 24; Reg. v. Worth, 4 Q. B., 132; Jones' Law of Ev., sec. 332; 1 Greenl. on Ev., sec. 149.

5. The title by possession in appellant shown in this record by the evidence introduced by appellant, the admission of record by appellee and estoppel thereby created, establish the right of appellant to the land in controversy as against appellees and makes complete defense herein. Turner v. Thomas, &c., 13 Bush, 518; Whipple v. Earick, &c., 93 Ky., 127; Am. & Eng. Ency. of Law. (2d ed.) vol. 1, p. 836; Altemus v. Campbell, 34 Am., Dec., 494.

6. The court erred in giving instructions to the jury.

7. We insist that the verdict of the jury is so palpably against the preponderance and weight of evidence, that this court on that ground, if no other, will reverse the judgment.

A. K. COOK FOR THE APPELLEE. (WM. S. PRYOR AND THOS. H. HINES OF COUNSEL).

1. On the validity of deed from Wm. Beard to Thos. J. Beard. Gardner v. Gardner, 59 Mass., 483; Lewis v. Watson, ———, Sou. Rep., 570; Fitzpatrick v. Engard, 34 Atl. Rep., 803; 10 O. St., 154; 21 Maine, 156; 6 Cush., 117; 6 Allen, 309; 6 Johns., 285; 9 Ire., 219; 21 Cal., 392; 100 Mass., 175.

2. On the delivery of this deed. Lewis v. Watson—Sou. Rep., 570; Ward v. Small's Admr., 90 Ky., 198; Brann v. Monroe, 11 Ky. Law Rep., 324; Com. v. Jackson, 10 Bush, 427.

3. On the competency of the evidence proving the sheriff's sales in 1853. Bullock v. Com., 96 Ky., 537; Bell v. Weatherford, 12 Bush, 505; Young v. Smith, 10 B. M., 294; Phillips' heirs v. Jamison, 14 B. M., 466; Lofland v. Ewing, 5 Litt., 43; Lemon v. Craddock, Lit. Sel. Cases, 252; Taylor v. Cox, 2 B. M., 434; Meechan v. Edwards, 92 Ky., 532; Brace v. Shaw, 16 B. M., 43.

4. On the point that an execution purchaser's rights are not de-pendent upon the sheriff's return. Reid v. Heasley, 9 Dana, 325; Bell v. Weatherford, 12 Bush, 505; Greer v. Wintersmith, 85 Ky., 516; 22 Am. & Eng. Ency. of Law, 640-641; Freeman on Executions, secs. 334, 339.

5. On the point that a sale of several tracts, in mass, can not avail the appellant in avoiding the sale. Freeman on Executions (2d. ed.) sec. 296; Stephens v. Taylor, 6 Lea (Tenn.), 307; Anderson v. Austin, 34 Bar., (N. Y.) 319; Grover v. Fox, 36 Mich., 461; Craig v. Stephens, 15 Neb., 362; 22 Am. & Eng. Ency. of Law, 614, 643; Ross v. Mead, 10 Ill., 171; McMullen v. Gable, 47 Ill., 67; Hicks v. Perry, 7 Mo., 346; Dougherty v. Linthicum, 8 Dana, 194; Williamson v. Logan, 1 B. M., 240.

6. On the validity of the deed of Ex-sheriff King. Chalfin v. Malone, 9 B. M., 496; Freeman on Executions, sec. 328, 327; Greer v. Wintersmith, 85 Ky., 516; Armstrong v. Easton, 1 B. M., 66; Thomas, &c., v. Thomas, &c., 87 Ky., 343; Dawson, &c., v. Litsey, 10 Bush, 408; 22 Am. & Eng. Ency. of Law, 525; Lemon v. Craddock, Litt. Sel. Cases, 252; Colyer v. Higgins, 1 Duv., 7; Rogers v. Darnaby, 4 B. M., 241; Lofland v. Ewing, 5 Litt., 43; Newton v. Prather, 1 Duv., 100; Allen v. Trimble, 4 Bibb., 24; 22 Am. & Eng. Ency. of Law, 528, 596.

7. On the point that the champerty statute does not apply to the deed from Newlee's heirs to John C. Colson, Sr. Cardwell v. Spriggs' hrs., 1 B. M., 372; Greer v. Wintersmith, 85 Ky., 516.

8. On the question of what is an adverse possession. 1 Am. & Eng. Ency. of Law (2d. ed.) 789, 794 and authorities cited in the notes.

9. On intention as a factor in adverse possession. Haffendorfer v. Gault, 84 Ky., 124; Smith v. Morrow, 5 Litt., 211; Jackson v. Huntington, 5 Pet., 439; Ewing v. Burnett, 11 Pet., 41; Prescott v. Nevens, 4 Mason, 330; Larwell v. Stevens, 2 McCrary, 311; 35 Am. St. R., 613.

10. On the point that the adverse possession was broken in March, 1889. 1 Am. & Eng. Ency. of Law (2d. ed.), 834-5; Christy v. Alford, 17 How., 601; Trotter v. Cassady, 3 A. K. M., 366; May v. Jones, 4 Litt., 23; Wickliffe v. Ensor, 9 B. M., 258; 2 Dana, 31; 5 Dana, 397; 39 Am. Dec., 658; Casey v. Inloes, 1 Gill, (Md.), 430; McEntire v. Brown, 28 Ind., 347; Core v. Faupol, 24 W. Va., 238; Ruffin v. Overby, 105 N. C., 78; Potts v. Gilbert, 3 Wash. (U. S.), 475; 1 Am. & Eng. Ency. of Law, (2d. ed.), 835, 837; Henderson v. Griffin, 5 Pet., 158; Hunnicutt v. Peyton, 102 U. S., 333.

11. On the point that the adverse possession of the appellant, though continued for fifteen years, is limited to the land, within Parker's 100-acre survey, that was enclosed by fence as much as fifteen years before June 6, 1895. 1 Am. & Eng. Ency. of Law (2d. ed.) 861, 868; Wright v. Mathison, 18 How., 56; Gregg v. Sayre, 8 Pet., 253; Lea v. Polk Co. Copper Co., 21 How., 493; Orr v. Griffin, 3 J. J. M., 269; Chandler v. Spear, 22 Vt., 388; Davidson v. Coombs, 5 Ky. Law Rep., 812.

12. On the point that there was not, at the institution of this suit, any outstanding title or right of entry in the execution defendant, Thos. J. Beard, or his heirs. Chalfin v. Malone, 9 B. M., 496; Connor v. Bell, 152 Pa. St., 444; Paldi v. Paldi, 84 Mich., 346; Whitlock v. Johnson, 87 Va., 323; Bradford v. Russell, 79 Ind., 64; Freeman on Executions, sec. 351.

WM. S. PRYOR AND THOS. H. HINES, IN A SUPPLEMENTAL BRIEF FOR APPELLEES.

1. The change of venue was properly denied.
2. Parker's patents were void and appellant's possession was not continuous.

Citations: Austin v. Colson, 18 Ky. Law Rep., 631; Hartley v. Hartley, 3 Met., 59; Russell v. Doyle, 84 Ky., 386; Williamsburg Boom Co. v. Smith, 84 Ky., 372; Phillips. v. Rothwell, 2 Mar., 13; McGee v. Morgan, 1 Mar., 62; Reynolds v. ————, 42 Barb., 418; Cook v. Lewis, 20 N. Y., 400.

CHAPMAN & SAMPSON (TINSLEY & FAULKNER, OF COUNSEL) IN A SUPPLEMENTAL BRIEF FOR APPELLANT.

Additional citations: Asher v. Beckner, 19 Ky. Law Rep., 521; Holton v. Alley, 15 Ky. Law Rep., 529; Bryant v. Wood, 90 Ky., 530; Cardwell v. Sprigg's hrs., 1 B. M., 370; Hunter v.

Christman, 6 B. M., 463; Farmer v. Lyons, 87 Ky., 422; Campbell v. Thomas, 9 B. M., 82; Thomas v. Harrow, 4 Bibb, 564; Fox v. Hinton, 4 Bibb, 559; Taylor v. Buckner, 2 Mar., 19; Robards v. Sanders, 3 Mar., 30; Brooks v. Clay, 3 Mar., 548; Am. & Eng. Ency., (2d. ed.) vol. 1, p. 836; Young v. Withers, 8 Dana, 166; Jones v. McCauley's hrs., 2 Duv., 14; Hinton v. Fox, 3 Litt., 384; Foreman v. Ambler, 2 Dana, 109.

A. K. COOK, FOR APPELLEES IN A PETITION FOR A RE-HEARING.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The reservoir, boiler house, and engine house of the appellant are situated upon the land in dispute. The appellees claim that the land in contest is covered by patents as follows: One of which was issued to James Farmer, July 19, 1826; one to Reuben Gibson, September 3, 1823; one to William Beard, No. 15,348, February 1, 1832; and one to William Beard, No. 15,349, February 1, 1832. It is claimed by the appellees that the bodies of land covered by the patents adjoin, constituting a contiguous boundary. Appellant claims the land in contest is covered by patent No. 54,838, for 100 acres, which was issued to Henry Parker, March 1, 1881, upon a survey which he had made on January 15, 1875, and by a patent No. 58654, for fifty acres, which was issued to him October 19, 1883, upon a survey which he had made March 16, 1881, and the boundaries of which adjoin.

We are of the opinion that the land in dispute is covered, in part, by each of the elder patents, so as that all of it is embraced by them. The grants to Parker likewise cover it. The appellant holds the lands as Parker's remote vendee, and claims that it and those through whom it claims have been in the continuing actual adverse possession of the land for more than fifteen years next before the institution of this suit, on June 6, 1895. The appellees claim that they have the legal right to the land covered by the elder pat-

ents, because of various conveyances from the patentees and others. So many questions have been raised in this case for our consideration that each will be considered as briefly as possible.

The appellees offered, and the court permitted to·be read, what purported to be a certified copy of a deed, dated August 10, 1825, for part of the land covered by Reuben Gibson patent. The copy would indicate, if admissible as evidence, that the original had been witnessed by Robert George, John Turner and George W. Craig. The clerk of the Harlan County Court (Harlan county being the county in which the land was then situated) certifies that "the foregoing indenture of bargain and sale from Reuben Gibson and Henrietta, his wife, to Johnson Drake, was presented to me in my office on the 24th day of October, 1825, and *acknowledged by the subscribing witnesses*, and the same is truly admitted to record in the clerk's office of the county court aforesaid."

It is unnecessary to quote the statute then in force, which required that the witnesses to the execution of a deed were to prove its execution; i. e. they must make oath to such facts as would show that the deed had been executed by the grantor. The law did not authorize a clerk to place a deed upon record when acknowledged by any one other than the grantor. The grantor in a deed is the only one who can acknowledge its execution. We must presume that the clerk did exactly what his certificate states was done. It would be a violent presumption for the court to say that the clerk intended to·certify that the witnesses had proven the execution of the deed, instead of saying that they had *acknowledged* it. It follows, as the execution of the deed was not properly proven, that the clerk

was not authorized to record it, and a copy of it is not admissible as evidence.

The court admitted as evidence a copy of the deed of William Beard to Thomas J. Beard, dated March 9, 1852. Names are appended to the deed in the form as follows:

"WILLIAM BEARD [Seal.],<br>Per FLEMING CAMPBELL."

"Signed in the presence of:

"Fleming Campbell.

"James H. Lee.

"Jefferson Craig."

The original deed was not offered. The clerk certifies that the deed was produced in his office, and proven by the oath of Fleming Campbell and James H. Lee, the subscribing witnesses, to be the act and deed of William Beard.

The court has reached the conclusion (not without difficulty) that the copy of the deed was admissible as evidence. If William Beard had directed some one to write his name to the deed, and it was done in his presence, it would have been his act.

Counsel for the appellant insist that the name of "William Beard, Per Fleming Campbell," imports that it was the act of Campbell, and not of Beard; that Campbell was executing the deed for Beard. This argument has much plausibility, but it is hardly probable that Fleming Campbell would appear on the instrument as a witness to his own act if he was assuming to represent Beard in its execution. Besides, there is proof of Campbell and Lee before the clerk that it was intended to be, and was, the act of Beard, and not of Campbell. We have concluded that the signature thus made simply imports that Camp-

[38]

bell signed Beard's name at his request, and added his
name to show that it was by him that Beard's name was
written.    The facts of the case sufficiently show an accept-
ance of the deed by the grantee.

It appears that at the March term, 1853, of the Knox-Cir-
cuit Court, George Brittain recovered a judgment against
Thomas J. Beard for $52.60 and interest and costs, and
at the same term John G. Newlee, recovered a judgment
against him for $125.62 and interest and costs. .

Appellees fail to exhibit the executions which they claim
were issued upon the judgments, but by parol testimony
endeavor to show that they were lost or misplaced, and
that they were levied upon the land which William Beard
had conveyed to Thomas J. Beard; that on the 23d day of
May, 1853, the land was sold, and at which sale F. Campbell
became the purchaser, at a price which paid the Brittain
execution and more, and the balance of the purchase money
was to go as a credit on the debt of Newlee; that after-
wards, to satisfy the balance of the judgment of Newlee,
the equity or redemption was sold, on the 24th day of Oc-
tober, 1853, and John G. Newlee became the purchaser.
It is claimed Campbell executed a bond for the amount
which he agreed to pay for the land (he says he never paid
it, and does not know who did), and that he was acting
for Newlee in the purchase.    It seems that Thomas J.
Beard was living upon the land at the time it is claimed
that it was sold under the execution, and, according to
some of the testimony, he remained on it until 1858 or
1859.

There is little evidence of doubtful competency in
the record tending to show that George Brittain had pos-
session of part of the land under Newlee for a time.    There
is also testimony tending to show that he claimed to hold

under Thomas J. Beard.  Unless Brittain held possession
of part of the land for him, Newlee never was in posses-
sion of any part of it.

The appellees claim to have derived title through John
C. Colson, Sr., and they endeavored to show that in 1872
or 1873 he let John G. Newlee have some money, and in
consideration of which he was to have the land.  He lived
near the land, but never had possession of any part of it.
The children of John G. Newlee attempted to convey it to
him by a deed dated April 20, 1882, at which time Parker
was in the actual adverse possession of it.  To avoid the
effect of the statute against champerty, the appellees en-
deavored to show that Newlee had made a verbal sale
of the land to Colson when the land was not in the adverse
possession of Parker, and, to carry that out, the deed of
the heirs of Newlee was made.  The evidence upon this
question is of a very unsatisfactory character, and the
circumstances developed in the case create a very serious
doubt in the mind of the court as to whether such a con-
tract of sale was ever made, although it does not show that
Newlee borrowed some money of Colson.  The deed which
the heirs of Newlee made to John C. Colson, Sr., recites
the consideration to be the sum of $500 to them in hand
paid; and Parker testifies that W. H. Newlee, one of the
heirs of John G. Newlee, told him some time after the
survey was made, in 1875, that he would put the matter in
the hands of a man who would get him off the land; and
we find about that time or shortly afterwards that Colson
appeared before the county clerk of Bell county, and pre-
sented for record a certificate of purchase of the equity
of redemption which had been given to John G. Newlee
by the sheriff, and which certificate had never been as-
signed to Colson.  It is most remarkable, if Colson bought

the land from Newlee, that he did not take a deed or title bond for it, or, if he got the certificate of purchase during Newlee's lifetime, he did not take an assignment of it. It is also exceedingly strange, if Colson bought the land, as claimed, in 1872, that he would have waited until 1882 before he got a deed for it from the heirs of Newlee. Again, it is strange why a man of his business capacity if he had bought the land, would have allowed Parker to take possession of it in 1875, and hold it until his death, without even, so far as this record shows, protesting against it, although he lived a mile and one-half or two miles from the place.

This court has held that deeds which are executed whilst land is in the adverse possession, but to carry out written or parol contracts made at a time when the land was not so held, are not a violation of the statute against champerty. Cardwell v. Sprigg's Heirs, 1 B. Mon., 372; Simon v. Gouge, 12 B. Mon., 164; Greer v. Wintersmith, 85 Ky., 516, [7 Am. St. R., 613, 4 S. W., 232]; Hopkins v. Paxton, 4 Dana, 36.

In order to recover in this case, it was essential for the plaintiffs to show that they had title to the land and right of entry; and this could not be done unless the title to the land had vested in Newlee by virtue of sheriff's sale to which we have alluded. The deed which they relied upon for that purpose was made by Demcy King, in 1894,—forty years after it is claimed the sale was made under the executions.

We will not go into the consideration of the question as to the regularity of the execution sales, or as to the right of the appellees to supply the executions claimed to have been lost by parol evidence on the trial of the case, because we have reached the con-

clusion that the deed which King, ex-sheriff of Knox county, made, is not valid. More than forty years had elapsed from the time the sale was made until the deed was made, in 1894. Beard lived on the land for some years after the sales under the executions, but the evidence leaves us in doubt as to the exact time. The evidence in the case does not make it certain that Newlee ever had possession of any part of the land through Brittain, but, if he did, it was before the late Civil War. There is evidence tending to show that Brittain claimed to hold under Beard. Newlee lived within a few miles of the land. There were some houses on it, which seem to have been permitted to go into decay. No one lived upon the land from 1860, until Parker moved upon it, in 1876.

We are of the opinion from all the facts and circumstances of this case, and the long delay in having King execute the deed, the conclusive presumption should be indulged that Beard had redeemed the land from the sales under executions, and the court should have refused to allow the deed to be read as evidence. As this deed was unadmissible as evidence, plaintiffs fail to show that they had title to the land.

As we do not know what course may be pursued in this case with reference to a future trial, we regard it as proper to pass upon some other questions which are complained of as errors.

The proof in this case shows that Parker built a house within his boundary in 1875, and the following year moved upon the land, and fenced up part of it. After that time he extended his fence, and also fenced up part of the land in the grant of fifty acres to him. He claimed to the extent of his patent boundary, and lived within it, during which time no one was in the actual adverse possession of

any of the lands covered by the elder patents to which we have alluded.

The court, in instruction No. 3, substantially told the jury that, if they found for the appellant, it could only do so to the extent of appellant's inclosures by fence. Parker entered under a color of title, and took actual adverse possession of the land to the extent of his boundary.

This court has repeatedly held that persons entering under surveys and junior grants do so under color of title. Farmer v. Lyons, 87 Ky., 426 [9 S.W., 248]; Thomas v. Harrow, 4 Bibb., 564; Roberts v. Sanders, 3 A. K. Marsh., 30; Franklin Academy v. Hall, 16 B. Mon., 473.

There is but one case that seems to hold otherwise—that is, Davidson v. Coombs, 5 Ky. Law Rep., 816—which is not in that regard in accord with the numerous adjudications of this court.

Under instruction No. 4, the jury was substantially told that if they believed that Thomas Jones and those claiming under him, for more than twenty years before the 25th of April, 1853, had the actual adverse possession of a certain part of the land (describing it), claiming it as their own, etc., the plaintiffs were entitled to recover three-fifths of it. This instruction completely ignored the question of adverse possession of the appellant and those through whom it claimed, and was erroneous.

It appears that, in the spring of 1889, Parker decided to leave the land he had in possession, and he made an arrangement with his brother-in-law, Henry Marsee, to take possession of it, and hold it for him, and that, after doing so, Marsee made some arrangement with one of the appellees by which he was to hold it for them. He moved in the Parker house, and took possession of the land; but,

when Parker found out that he was claiming under the appellees, he returned, went into the house, and in a short time Marsee left, and Parker surrendered the possession of the place to one Edmonson, to hold for the benefit of the Parker claim.   Whilst Marsee testifies that he entered under Colson, his statements do not amount to a denial of the contract, as claimed by Parker; and, under such circumstances, the possession was never derelict, and there was such an occupancy as would have authorized an action of ejectment.   Forman v. Ambler, 2 Dana, 110.   Besides, at the time this took place, there was a suit in ejectment pending in the Bell Circuit Court by the appellees against Parker, to recover the possession of the land; and it continued to pend until some time in 1890, when the parties went into a trial, and for some cause the plaintiffs concluded they could not succeed, the jury was discharged, and the action dismissed without prejudice.   There was no occasion for the plaintiffs to institute a suit in ejectment to recover the land during the time Marsee was there. The plaintiffs recognized that Parker was in the possession of the land, and thereafter kept the suit on the docket, and attempted to recover the possession of it.

The court said in Turner v. Thomas, 13 Bush, 526, [26 Am. R., 211]: "Appellant entered *pendente lite*.   He brought the question of his entry into the cause, and, the whole case being before the chancellor, he could have placed the parties in *statu quo*."

The court said in Whipple v. Earick, 93 Ky., 127, [19 S. W., 237]:  "The attempt of the appellants to take possession after the bringing of this action by moving a house onto the property, can not avail.   It was *pendente lite*, and can not affect the possession which the appellees had at the bringing of the suit."

The parties remained in *statu quo*, and, if the claim of Parker be true, the continuity of his possession was not broken.

The court should have given instruction No. 6, which was offered by the appellant, which substantially told the jury the continuity of the defendant's possession was not broken if they believed that Marsee agreed to take and hold under Parker, and afterwards attempted to claim and hold under the appellees, without the consent of Parker.

We are of the opinion that the facts in this case show that owing to the plaintiffs' official and political associations and family relationships, resulting from marriages and intermarriages, and from the prejudice against the defendant owing to its supposed connection with other business enterprises about the city of Middlesbourgh, it could not get a fair trial in Bell county, and the court should have sustained the motion for a change of venue.

The facts in this case show a greater reason for granting a change of venue than in the case of Asher v. Beckner, 19 Ky. Law Rep., 521 [41 S. W., 35]. The judgment is reversed for proceedings consistent with this opinion.