## Abbott v. Perkinson.

(Decided September 21, 1911.)

### Appeal from Trimble Circuit Court.

1. Adverse Possession.—It is not essential to an adverse holding that the land so held should be enclosed. How the boundary is

marked to which the holding extends is not so important, if it is well defined. And so if land is cultivated under claim of right continuously for fifteen years or more to a boundary well marked by cultivation, the adverse holding will extend to the limits of the ground so cultivated as effectually as it would to a fence.

2. Champerty—Deeds Made in Pursuance of Parol Contract.—The law of champerty does not apply to a deed made to carry into effect a contract for the sale of land of which there was no adverse possession at the time the contract was entered into, although the land be held adversely when the deed is made, and this rule applies to an executory verbal contract of sale.

JAMES S. MORRIS, E. W. TANDY and C. H. MORRIS for appellant.

MOODY & BARBOUR and CLAUDE B. TERRILL for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In 1876 W. R. Abbott sold seventy-eight acres of a tract of land containing 210 acres then owned by him to E. M. Garriott, the father of appellant; and in 1896 Garriott conveyed this land to his daughter, the appellant. In 1889, J. J. Abbott, a son of appellant, purchased the remainder of the 210 acres, and owned the same until 1902, when it was sold to W. L. Garriott. In 1905, W. L. Garriott sold the land to Vories and Perkinson, and in the same year Perkinson, the appellee, became the owner of it. In 1908, the appellant brought this suit in ejectment to recover from Perkinson some seven acres of the land conveyed to her by E. M. Garriott, charging that Perkinson had wrongfully taken possession of it. For answer, Perkinson denied that he was wrongfully or at all in the possession of any part of the land owned by appellant. He also pleaded and relied on the statute of limitations, and further averred that if the deed of appellant embraced any of the land in controversy it was champertous. In addition to these defenses, he set up that appellant was estopped to assert claim or title to the land.

The deed made by W. R. Abbott to E. M. Garriott, as well as the deed made by E. M. Garriott to appellant, described the seventy-eight acres conveyed by metes and bounds, and courses and distances; but the deed made by appellant, or rather her husband, W. R. Abbott to J. J. Abbott in 1889 conveying to him the remainder of the 210 acres described the boundary of the 210 acres except-

ing therefrom the seventy-eight acres theretofore sold to E. M. Garriott, without giving any description of the remainder of the 210 acres. The conveyance made by J. J. Abbott, as well as the deed under which appellee claims the land in dispute merely followed the description in the deed made to J. J. Abbott.

The land in dispute lies on that portion of the line between the seventy-eight acres and the balance of the 210 acres, that begins at the Ohio river and runs thence in an easterly direction. It appears that no fence was ever erected on the division line between the seventy-eight acres and the remainder of the 210 acre tract, and until 1892 no attention was given to any division line or the place where it should be—the seventy-eight acres being treated and cultivated by the parties in possession as a part of the 210 acres. But in 1892 J. J. Abbott who in 1889 had become the owner of the 210 acre tract excepting the seventy-eight acres, moved on the land purchased by him, and then for the first time a division line was marked and recognized to exist between the seventy-eight acres and the remainder of the 210 acres. At the time J. J. Abbott moved on the land purchased by him, the appellant resided at the old homestead which was situated on the seventy-eight acre tract, for although it had been conveyed by her and her husband to her father E. M. Garriott in 1876, there had never been any change in the possession, and she continued to reside on and use and control the seventy-eight acres as if it had never been sold. When J. J. Abbott moved on the land bought by him and established a line between it and the seventy-eight acre tract, he cultivated the land on his side of this line during all the time that he owned the place. Whether this division line established in 1892 was located with the consent of appellant or E. M. Garriott then the legal owner, does not appear. but that it was fixed by J. J. Abbott is clearly shown. And it is also proved beyond question that in 1895 a surveyor named Peck was engaged by J. J. Abbott and appellant, or her son acting for her, to locate the line between the seventy-eight acres and the remainder of the tract, and that Peck located the line substantially at the place that it had been fixed by J. J. Abbott about three years before. This line so established in 1892, and re-established, if it may be so termed, by the Peck survey in 1895, has been at all times treated as the division line between the two tracts. Appellee claims that line as the division line,

while appellant now insists that the line was never established and that the calls in her deed, or rather the particular one along the line in controversy, fixed the division line some distance beyond the line made by Peck and located 'it so to include in her boundary the land in controversy.

As the deed conveying the seventy-eight acres described it by metes and bounds, and courses and distances, and the deed to J. J. Abbott and subsequent owners, including appellee, of the remainder of the 210 acres, merely conveyed the 210 acre boundary excepting from it the seventy-eight acres previously sold, it is of course manifest that the boundary in the deed to the seventy-eight acres must control. So that one of the principal questions in the case is the true location of the line in the seventy-eight acre deed that touches the land in dispute. Putting aside for the moment the other issues raised by the pleadings and evidence, if the land in dispute is embraced within the boundary of appellant's deed, she was entitled to recover it. On the other hand, if the calls in her deed do not include this land, her action must fail. Where the line of the seventy-eight acres at the point in dispute is located is involved in some doubt, due to the difficulty in running the line on account of the absence of established corners. But a careful consideration of the testimony of the surveyors satisfies us that the true line is located at the place fixed by Peck; and this being so, no part of the land in dispute is owned by appellant, and the jury were warranted by the evidence in finding against her. But, it is argued that as the issues of adverse possession, champerty and estoppel were also submitted to the jury by instructions, it can not be determined whether the jury found against appellant upon the theory that her deed did not embrace the land in controversy, or upon the theory that appellee was entitled to hold it by adverse possession, or that appellant was estopped to assert title to it, or that the deed conveying to her the land was champertous. And so it is said that if the instructions on either of these issue were erroneous, there should be a reversal as the jury may have found against appellant upon an issue presented by the erroneous instruction. Upon the question of adverse possession, two points are made by counsel for appellant, first: That there was not sufficient evidence to authorize a submission of this issue to the jury, and, second: That the instruction upon the subject

of adverse possession was erroneous. The defense of adverse possession was not clearly sustained, as there is doubt if the holding of J. J. Abbott previous to the Peck survey was adverse, and this survey was only made about thirteen years before the action was brought. But we think there was sufficient evidence of adverse holding for more than fifteen years before the institution of the action to justify the court in submitting this issue to the jury. It is not essential to an adverse holding that the land so held should be enclosed. If the land is claimed and held to a well defined boundary, and holding is open, notorious, adverse and continuous for a period of fifteen years or more, it will be sufficient to support an instruction and a finding thereunder upon the subject of adverse possession, although there may be no evidence that the land so held was actually enclosed by a fence. How the boundary is marked to which the holding extends is not so important, if it is well defined. To illustrate, if land is cultivated under claim of right continuously for fifteen years or more to a boundary well marked by the cultivation, the adverse holding will extend to the limits of the ground so cultivated as effectually as it would to a fence. LeMoyne v. Roundtree, 135 Ky., 40; Webb v. Hynes, 9 B. Mon., 388. And there was some evidence that J. J. Abbott, beginning in 1892, which was more than fifteen years before the suit was brought, and his vendees, including appellee, have at all times held and claimed by cultivation to the line now claimed by appellee as the true division line.

The criticism of the instruction is technically correct, but not of sufficient moment to justify a reversal.

Upon the question of estoppel, there was evidence that appellant advised appellee to purchase the land, and at the same time told him that the division line was at the place now claimed by appellee. This evidence was sufficient to warrant the instruction given upon the subject.

Upon the issue as to champerty, we think the court erred in excluding the evidence offered by appellant to show a gift of the land by E. M. Garriott to her many years before the deed was made by him, and at a time when no part of the land subsequently conveyed was held adversely by any person. This evidence was admissible to defeat the plea of champerty, as it is well settled that "the law of champerty does not apply to

deeds made to carry into effect a contract for the sale of land, of which there was no adverse possession at the time the contract was entered into, although the land be held adversely when the deed is made; and this rule applies to an executory verbal contract of sale.'' Greer v. Wintersmith, 85 Ky., 516. Under this principle, the plea of champerty was not available to defeat the deed made by E. M. Garriott to appellant in 1896, although at that time the land was in the adverse possession of J. J. Abbott, as there was some evidence offered that the deed was made pursuant to and to carry into execution a parol gift of the land many years before and at a time when there was no adverse holding. But the error committed by the court in excluding evidence of the gift and in instructing the jury upon the subject of champerty are not under the facts shown by the record sufficient to justify a reversal. There was evidence to warrant a verdict for appellee upon the ground of adverse possession, as well as estoppel. And in addition to this, appellant failed to show that the land in dispute was embraced within the lines of her deed. Indeed, the conduct of appellant in delaying for so many years to take any action to recover the land in dispute although she at all times knew it was being cultivated and claimed by the vendors of appellee, and her long acquiescence in the location of the line between the two tracts where it is claimed to be by appellee, is persuasive if not convincing evidence that her assertion of ownership is not well founded. For more than fifteen years, certainly for more than thirteen years, appellant and her father with knowledge of the location of the line as claimed by the appellee and his vendors, did not assert as they could have done at any time within that period a right to the land now claimed by her. Delay like this in the assertion of a claim leaves the impression that it is not meritorious, and to reverse the case for the error mentioned would be to ignore the substantial features of the record and order a new trial for an error that in our judgment did not prejudice the substantial rights of appellant.

Wherefore, the judgment is affirmed.