## Campbell et al. v. Embry.

(Decided May 29, 1936.)

S. D. HODGE for appellants.

CARL H. BOONE and DELMA MAUZEY for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

On March 15, 1935, Embry filed a petition in the Grayson circuit court in which he alleged that he was the owner and entitled to possession of a described tract of land on Brushy Pond creek, containing about 146 acres. He charged that appellant and his tenant Woosley, a party defendant to the action, were wrongfully withholding from him his rightful possession. He claimed that he and those from whom he obtained title had been the owners and in possession of the land since 1921. He also asked damage for the unlawful detention and for rents and profits.

Campbell and Woosley answered jointly, alleging that Campbell and his wife owned the land, and as such owners had put Woosley in possession under a rental contract; that he had been living on the land and cultivating crops. The foregoing constitutes the pleadings, and upon submission of the case under instructions to which both parties objected, without offering others, and upon such proof as was adduced, the jury returned a verdict in favor of Embry. The defendants appeal.

The land in question was formerly owned by Mrs. Maud Napier King, who had been born and raised on the place, obtaining title by a deed from her mother in which she divided land (of which the 146 acre tract was a part) between her daughter and a nephew Clarence Brown. Mrs. King (formerly Maud Napier) had lived on the place until five or six years before the suit, when she married Mr. King and moved to Chicago. When she left the home place, it was turned over to Clarence Brown as her tenant. He did not live on the place but cultivated it, and at all times carried the keys to the house, in which Mrs. King on her de-

parture for Chicago had left a quantity of household furniture.

Appellant's claim to title arises in this way: Mrs. King defaulted in payment of taxes on the farm in 1930 and 1931, and, same not having been paid by December 31, 1931, the sheriff on June 13, 1932, exposed the land to sale for taxes, interest, and costs, whereupon I. T. Layman became the purchaser at the sum of $52.29. Layman assigned his rights under the purchase to Mr. and Mrs. Campbell "some time in 1933." Campbell says he paid Layman $87 for his rights, believing at the time it was Layman's land. He thereafter paid taxes to the amount of $71.50 for the years succeeding 1931. The deed from the sheriff to Mr. and Mrs. Campbell was executed on July 20, 1934. This deed described the land as being the same conveyed by Martha Brown to Maud Napier by deed of September 3, 1921, recorded in Deed Book 71, p. 480.

Embry claims to have obtained his title to the land in the following manner: Prior to November 20, 1934, he was seeking to buy a piece of land around Caneyville. He approached Mrs. King's attorney in Leitchfield and made known his wishes. Embry was advised that he could buy the Maude King place, which was some distance from Caneyville, at a very reasonable price, and it was suggested that he go look at the farm. However, he says that he had lived in the neighborhood of the land and knew it. The price appealed to him, and he and the attorney traded, Embry giving a check for $200, payable to Mrs. King or her attorney, which showed the payment to have been on the Maude King farm. It was shown that Mrs. King had been urging her attorney to negotiate a loan for the purpose of paying off the taxes due, but he had advised her, and she had agreed to sell, was notified of the trade and came on from Chicago with the avowed purpose of making a deed, but she was not accompanied by her husband, hence the deed from the Kings to Embry was not executed until some time in February, at which time, or prior thereto, Embry executed his note for a balance of $600, the agreed price being $800.

Woosley, Campbell's tenant, took possession of the property on December 14, 1934. Mrs. King and Embry

went to the place on the 15th and found him in possession. Woosley had gotten the keys from Clarence Brown, Mrs. King's nephew and tenant, took possession, but did not disturb any of Mrs. King's household goods which were located in several rooms.

The case was prosecuted and tried out on appellant's theory that the deed from Mrs. King to Embry was void, because made at a time when Campbell held a deed of prior date, and was through his tenant Woosley in possession thus violating section 210, Ky. Stats. 1930 Ed. which provides that:

"All sales or conveyances, including those made under execution, of any lands, or the pretended right or title to the same, of which any other person at the time of such sale, contract or conveyance, has adverse possession, shall be null and void."

From the language it may be readily gathered that one relying on the statute, to do so successfully, must show that he was not only in adverse possession when the conveyance or deed was made, but must show such possession at the time the sale or the contract to convey was made. We have given this statute such construction in several cases.

In Greer v. Wintersmith, 85 Ky. 516, 4 S. W. 232, 234, 9 Ky. Law Rep. 96, 7 Am St. Rep. 613, we held:

"And it is well settled that the law of champerty does not apply to deeds made to carry into effect a contract for the sale of land of which there was no adverse possession at the time the contract was entered into, although the land be held adversely when the deed is made, and this rule applies to an executory verbal contract of sale. See Simon v. Gouge, 12 B. Mon. [156] 164; Hopkins v. Paxton, 4 Dana, 36; Cardwell v. Sprigg's Heirs, 1 B. Mon. [369] 372."

The foregoing case was referred to with approval in Abbott v. Perkinson, 144 Ky. 495, 496, 139 S. W. 745, 747, Ann Cas. 1913A, 747, in which this court held to be competent evidence offered by the appellant to show that many years before a deed was made by E. M. Garriott he had made a gift of the land to his daughter, and at a time when no part of the land subsequently

conveyed by deed was held adversely by any other person. The court said:

"This evidence was admissible to defeat the plea of champerty, as it is well settled that 'the law of champerty does not apply.'"

The court then quotes the language above from the Greer Case.

In the case of Day v. Hicks (Ky.) 124 S. W. 805, 806, the court said:

"It is only when a deed is made to carry into effect a previous understanding or contract entered into when the land was not adversely held, that the deed is not champertous as to those having adverse possession at the time of its execution."

Citing the cases supra, with the exception of the Abbott Case, we wrote in Middlesboro Waterworks v. Neal, 105 Ky. 586, 49 S. W. 428, 430, 20 Ky. Law Rep. 1403, as follows:

"This court has held that deeds which are executed while land is in the adverse possession, but to carry out written or parol contracts made at a time when the land was not so held, are not a violation of the statute against champerty."

The cases cited are conclusive of the question of law here presented, since it is very definitely shown that, though the deed was made to Mr. and Mrs. Campbell on July 20, 1934, Woolsey was not put in possession until December 14, 1934, and Embry's contract to purchase the land, or we might say its purchase, was on November 20, 1934. There was a feeble showing that Campbell had allowed Brown to cultivate a part of the land in 1933, at which time he was still a tenant in a sense, of Mrs. King, as it is clearly shown that he did not surrender the keys to the house until Woosley moved in, about December 14, 1934. This evidence of tenancy between Campbell and Brown (a question for the jury) is not at all satisfactory, and again, if there had been satisfactorily shown the relation of landlord and tenant, Brown was placed in possession, if ever at all, in 1933, long before the deed from the sheriff to the Campbells, and at a time when they only had a lien on the land for the amount of

taxes they had paid, which land was subject to redemption by Mrs. King or her agent. Section 4151-2, Ky. Stats., 1933 Supp.

Aside from what we have said above, the jury trying the case found for Embry, and there was ample testimony upon which to base a conclusion that appellant did not by proof sustain his alleged claim of adverse possession, and, since this is so, and the law is as above indicated, the judgment below should be and is affirmed.