## Smith et al. v. Mathers' Adm'r et al.

Jan. 9, 1940.

James T. Robertson for appellants.

Hansford Peterson, Samuel Wilson and I. B. Ross for appellees.

214

Affirming.

Dr. C. W. Mathers, a citizen and resident of Nicholas county, died on March 7, 1937, at the age of 81. Thereafter a writing purporting to be his last will and testament was duly admitted to probate as such in the county court of that county. The testator was survived by a widow but no children or direct descendants, his only heirs being collateral kindred of whom those closest related were first cousins.

Mrs. Sallie B. Smith and six other of the collateral kindred of testator on the maternal side instituted this contest proceeding by appealing to the circuit court of Nicholas county from the order of the county court admitting the will to probate making the administrator with the will annexed, the widow and devisees, trustees and other collateral kindred of the testator, parties appellee. Some months after the appeal had been prosecuted and some orders had been made in the case, the contestants filed a petition for change of venue supported by accompanying affidavits. The contestees filed counteraffidavits and change of venue was denied.

Trial resulted in a verdict and judgment finding the paper admitted to probate in the county court to be the last will and testament of C. W. Mathers and contestants are appealing.

While a considerable portion of the brief for appellants is devoted to a discussion of evidence and proven facts bearing on the testamentary capacity of testator, it is admitted by their counsel that the trial court correctly determined that the evidence presented a proper question for decision by the jury on that issue and that their clients rest this appeal on the question of their right to change of venue and a new trial in a county other than Nicholas, waiving all other grounds for reversal.

The grounds for change of venue as set out in appellants' petition are that appellants could not have a fair trial in Nicholas county on account of the undue influence of the contestees, Dr. Mathers, Mrs. Ada Mathers, the Nicholas county fiscal court, the members thereof, the University of Kentucky, the Midway Female Orphans School and the other contestees in Nicholas county; that none of the appellants resided in this county but resided in other states and counties far re-

moved therefrom and were not acquainted with or known to the citizens thereof eligible for jury service; that the appellees were intimately and favorably known to all citizens of that county eligible for jury service and were in continuous contact with them by reason of professional, business and social relations; that none of appellants' counsel resided in that county while one of the counsel for appellees was a resident thereof and had wide and deserved influence and social and business connections therein; that one of the other attorneys for appellees had for many years been a citizen and resident of an adjoining county and had practiced extensively in that county; that the testator devised $100,000 with directions that the proceeds be paid by designated trustees to the county of Nicholas to be used for the schooling of indigent white boys and girls in that county between the ages of 6 and 18 years and also devised $50,000 to Nicholas county for a trust for the maintenance of a hospital at Carlisle; that because of these devises every white citizen eligible for jury service in Nicholas county was directly or contingently interested in upholding those provisions in the will and obtaining the benefits thereof for himself and his neighbors; that $6,000 was attempted to be devised to a Presbyterian Settlement School of Eastern Kentucky and the Midway Female Orphans School was made residuary legatee and that members and friends of such church and school are numerous in Nicholas county.

Affidavits of four citizens of the county were filed with the petition, all of which read:

"The affiant is a citizen and housekeeper of Nicholas county and has read the attached copy of application for a change of venue, and believes the statements therein made are true, and that the contestants, Robert W. Baskett, and others, can not have a fair trial in Nicholas county owing to the undue influence of the contestees and beneficiaries under the alleged will of Dr. C. W. Mathers."

There is also an affidavit of one James T. Robertson, who at the request of attorneys for appellants interviewed citizens and residents of Nicholas county in connection with the proposed application for change of venue. He stated that he was not generally acquainted with the citizens of the county and therefore was able to interview only a comparatively small portion of those

eligible for jury service; that he was only able to procure 2 affidavits from credible housekeepers of the county in support of application for change of venue but many others whom he interviewed did state to him that they did not think appellants could get a fair trial and many of them were emphatic in such statement but refused to make an affidavit in support of the application; that he believed the influence of appellees and their counsel in the county was so great that appellants could not have a fair trial therein especially in view of the fact that neither appellees nor their counsel are citizens or well known in Nicholas county.

Appellees filed counteraffidavits of sixteen citizens of Nicholas county, worded alike and to the effect that the affiants are acquainted with a majority of the citizens in their community and in the county and were acquainted with the ability, trustworthiness, etc., of those who are qualified for and would be doing jury service; that comparatively few of the children of Nicholas county would benefit by upholding of the will and that the devise for the benefit of the school children of the county and the hospital at Carlisle would not swerve or influence jurors of the county in the discharge of their duty; that affiants knew of nothing whatever that would prevent the contestants from having the same fair and impartial trial that any other litigant would have in that county.

Counsel for appellees argue most earnestly that a change of venue in will cases is neither required or permissible under the law and the greater portion of their extensive brief is devoted to that question. The brief is interesting and instructive from both a historical and legal point of view. It is also argued on behalf of appellees that in any event the application for change of venue was not seasonably made. While we do not find ourselves in agreement with counsel for appellees that a change of venue is not permissible under our laws in a proceeding of this character where the circumstances would warrant same, we find it unnecessary to determine that or the question as to whether the application was timely, since if it be assumed that a change of venue in a proceeding of this character is authorized and that the application therefor measured up to every requirement we could not say under the showing made that the lower court abused the sound discretion with which it is invested in such matters in denying the application.

Counsel for appellants cite and rely on the cases of Asher v. Beckner, 41 S. W. 35, 19 Ky. Law Rep. 521; Middlesborough Waterworks Co. v. Neal, 105 Ky. 586, 49 S. W. 428, 20 Ky. Law Rep. 1403; Wall v. Muster's Ex'rs, 63 S. W. 432, 23 Ky. Law Rep. 556; Louisville Times Co. v. Lyttle, 257 Ky. 132, 77 S. W. (2d) 432.

While in the first case cited the evidence bearing on the question is not detailed at length, it is said [41 S. W. 46, 19 Ky. Law Rep. 521]:

> "The indisputable facts tend strongly to show that appellee had such an influence in Clark county, the county of his home, that it was not probable that appellant, who was a nonresident of the county, could have an equal chance upon the trial of the case, as the law allows or intends that all litigants should have."

In the second case the opinion does not detail the evidence heard on the motion for change of venue but says in substance that owing to the plaintiff's political associations, family relationships and some prejudice against the defendant owing to supposed connection with other business enterprises around the city of Middlesboro it could not get a fair trial in Bell county.

In the third case cited it appeared that the appellees were prominent with influential connections, socially and politically and otherwise, while the appellant was an illiterate old woman under indictments for murder and keeping a bawdyhouse, which indictments she swore were procured by her adversaries for the purpose of discrediting her. The latter case was an action for libel growing out of a newspaper account concerning the killing of prominent citizens in Clay county in what appeared to be a fresh outbreaking of the noted "White-Bailey feud" which existed in Clay county for a number of years and in which prominent citizens who were members of each of the opposing factions had been killed. Without entering into detail the evidence clearly tended to show that the state of feeling and prejudice in Clay county was such that a panel of unbiased and unprejudiced jurors could not likely be obtained.

Under the statutes and as noted in Louisville Times Company v. Lyttle, supra, a change of venue may be had because of odium which attends a party or his cause of action or defense or because of undue influence of his adversary in the county. Kentucky Statutes, Section

1094. Here there is neither showing nor claim of any odium attending appellants and therefore any right to change of venue must be rested on the undue influence of appellees or prejudice or odium attending appellants' cause of action. The administrator with the will annexed was not a citizen or resident of Nicholas county but resided in an adjoining county. The result of the litigation as the record discloses was a matter of little concern to the widow because of an antenuptial contract. Benefits derived under the will by citizens of the county were contingent and necessarily very few would be directly benefited by the devises made for the benefit of indigent school children or for the hospital. Many of the institutions that would benefit under the will were located in another county and some in remote counties. In Rand, McNally & Company v. Commonwealth, 106 S. W. 238, 32 Ky. Law Rep. 441, and in Graziani v. Burton, 97 S. W. 800, 30 Ky. Law Rep. 180, in which it was sought to recover the sum of $10,000 on a school book bond, it was held that the defendants were not entitled to a change of venue because any recovery would go to the school fund of the county and the interest of anyone who might be called as a juror being too remote and small to justify the change of venue.

The trial judge who determined the application for change of venue was vested with a sound discretion in determining the matter. Pierce v. Crisp, 267 Ky. 420, 102 S. W. (2d) 386; Louisville Times Company v. Lyttle, supra. Under the circumstances revealed by the record and authorities cited we unhesitatingly conclude there was no abuse of discretion in this instance.

Judgment affirmed.

Whole Court sitting.